# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ZACHARY WATTS,<br><br>    Plaintiff,<br><br>v.<br><br>KYLE WILLIAMS and<br>TRACY PEEK,<br><br>    Defendants. | Case No. 3:18-CV-01334-NJR-GCS |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Zachary Watts, an inmate of the Illinois Department of Corrections ("IDOC"), filed this suit pursuant to 42 U.S.C. § 1983 alleging that, while he was incarcerated at Pinckneyville Correctional Center, Defendant Kyle Williams, a correctional officer, and Defendant Tracy Peek, a nurse, were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. According to Watts, both Williams and Peek denied his requests for clean, new colostomy bags and medical supplies.

Now before the Court are Defendants' motions (Docs. 27, 30) arguing that Watts failed to exhaust his administrative remedies prior to filing suit. For the reasons explained below, the Court grants Defendants' motions for summary judgment.

### FACTUAL BACKGROUND

Watts filed his complaint on June 28, 2018, alleging deliberate indifference to his serious medical needs by Defendants Williams and Peek. Watts is confined to a wheelchair and has a colostomy bag. He claims that he did not receive his needed medical supplies,

namely new colostomy bags, on November 13, 2016. He told the nurse in charge of distributing supplies that day that he needed the bags, but the nurse did not have any. As a result, Watts alleges that he was forced to wear a diaper around his open stomach wound for two weeks while the healthcare unit failed to provide him with his much-needed colostomy bags.

According to Watts, on June 11, 2017, Peek informed him that she did not have any colostomy bags. When Watts asked her what to do because he was using his last bag, Peek allegedly told him to reuse it or to use the clear garbage bag that his diapers and wipes came in. He also claims that she told him to write a grievance if he "didn't like it." (Doc. 1, p. 11). Watts alleges that he also spoke with Williams about his medical needs and asked him to ask the healthcare unit about Watts's supplies, particularly his colostomy bags, but Williams did not help him.

Relevant to his claims in this action, Watts filed two grievances. The first, dated November 14, 2016, complained that he was out of colostomy bags and that he did not receive his weekly supply from the healthcare unit. (Doc. 28-2, p. 10-16). The grievance mentioned a nurse, but it did not mention a correctional officer's involvement. A grievance counselor responded to the grievance on December 7, 2016, stating that Health Care Unit Administrator Brown spoke with Watts on several occasions and explained that he did not need to use a new bag each day. Brown also told the grievance counselor that when Watts was shaken down in September, he had ten bags in his cell, and that the need for additional supplies was addressed with Wexford.

A grievance officer denied the grievance on January 5, 2017, and the Chief Administrative Officer (CAO) concurred in the decision on January 25, 2017. While Watts

signed and dated the appeal section on the grievance response on February 7, 2017, it was not received by the Administrative Review Board (ARB) until March 10, 2017, two weeks after his appeal deadline lapsed. The ARB offered no further redress on March 22, 2017, finding that Watts did not submit his appeal within the timeframe outline in Department Rule 504. (Doc. 28-2, p. 10-16).

Watts filed a second grievance about not receiving sufficient numbers of colostomy bags on June 13, 2017. (Doc. 28-1, p. 25-27). In it, he complains that on June 11, 2017, Tracy Peek passed out medical supplies. Watts told her that he needed bags and was in desperate need of a colostomy bag dressing change. Peek allegedly told him to use the same bag he had on or to use the bag that his medical supplies came in. The grievance does not mention a correctional officer by name or by description.

Watts marked the grievance as an emergency, and the CAO agreed that it was an emergency on June 30, 2017. A grievance officer reviewed the grievance on July 7, 2017, and recommended that it be denied because the colostomy bags are reusable, and Watts was found to keep a stockpile of bags hidden in his cell in the past. The CAO concurred in the response on July 18, 2017. (Doc. 28-1, p. 25-27). There is no record of an appeal of the June 2017 grievance in the ARB's records.

**LEGAL STANDARDS**

Summary judgment is "proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall

be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added).

Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). In *Pavey*, however, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008). Here, the question of exhaustion does not rely on weighing debatable factual issues and involves only a question of law.

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey*, the Seventh Circuit set forth procedures for a court to follow in a situation where failure to exhaust administrative remedies is raised as an affirmative defense. The Seventh Circuit stated the following:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an IDOC inmate, Watts was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims properly. *See* 20 ILL. ADMIN. CODE §504.800, *et seq*. The grievance procedures first require an inmate file his grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE §504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the Director through the ARB. *See* 20 ILL. ADMIN. CODE §504.850(a). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE §504.850(e).

The grievance procedures also allow an inmate to file an emergency grievance. *See* 20 ILL. ADMIN. CODE §504.840. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender [such that] the grievance [should] be handled on an emergency basis." 20 ILL. ADMIN. CODE §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender indicating what action shall be or has been taken." 20 ILL. ADMIN. CODE §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE §504.850(f).

## ANALYSIS

Neither of Watts's relevant grievances were exhausted fully prior to him filing suit against Defendants Peek and Williams. Watts failed to appeal the CAO's decision on his June 2017 grievance to the ARB. As such, it was not exhausted fully. While Watts attempted to appeal the denial of his November 2016 grievance, the ARB received his appeal well outside the 30-day timeframe required by Department Rule 504. The ARB was not incorrect in concluding the appeal was not timely, and, as a result, the November 2016 grievance was not fully exhausted. Additionally, neither grievance mentions Defendant Williams or any correctional officer by name or by description in a manner that put Pinckneyville on notice

that there were issues to resolve related to a correctional officer's interactions with Watts. Thus, Watts failed to fully exhaust his administrative remedies prior to filing suit.

## Conclusion

For the reasons set forth above, Defendants' motions for summary judgment (Docs. 27, 30) are **GRANTED**. Plaintiff Zachary Watts's claims against Defendant Kyle Williams and Defendant Tracy Peek are **DISMISSED without prejudice** for failure to exhaust administrative remedies. The Clerk of Court shall enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED: September 25, 2019

*[signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**